1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PRECISION INDUSTRIAL
CONTRACTORS, INC., a Washington
Corporation,

             Plaintiff,

      v.

JACK R. GAGE REFRIGERATION, INC.,
a Utah corporation, d/b/a ALPHA OMEGA
INDUSTRIAL; CHRISTOPHER M
MCCLELLAN and TAMI L MCCLELLAN,
husband and wife, and the marital
community comprised thereof, d/b/a CMC
CONSULTING, LLC; and, DANIEL
JASON HOYT, an individual; and JOHN
DOES 1-10.

             Defendants.

Case No. 3:19-cv-5810

**COMPLAINT**

1.  MISAPPROPRIATION OF
    TRADE SECRETS UNDER 18
    U.S.C. § 1836

2.  VIOLATION OF TRADE
    SECRETS UNDER
    WASHINGTON TRADE
    SECRETS ACT

3.  BREACH OF FIDUCIARY DUTY
    AND DUTY OF LOYALTY

4.  TORTIOUS INTERFERENCE
    WITH BUSINESS
    EXPECTANCY

5.  CONVERSION

6.  BREACH OF CONTRACT

7.  UNJUST ENRICHMENT

**[JURY TRIAL REQUESTED]**



Plaintiff Precision Industrial Contractors, Inc. ("PIC" or "Plaintiff"), through its undersigned attorneys, for its complaint against Defendants Jack R. Gage Refrigeration, Inc., d/b/a Alpha Omega Industrial ("Alpha"), Chris McClellan and Tami McClellan ("McClellans") d/b/a CMC Consulting, LLC ("CMC"), and Daniel "Jason" Hoyt ("Hoyt") alleges:

## I.      NATURE OF THE ACTION

1.      Defendants, Chris McClellan, Tami McClellan, and Daniel Jason Hoyt were all management level employees of the Plaintiff who were placed in positions of trust where they were provided access to confidential, proprietary, and trade secret information. They therefore owed, and still owe, PIC a duty of loyalty, which includes the duty not to use PIC's confidential, proprietary, or trade secret information for their own selfish purposes, including competing against PIC. They also had a duty not to use PIC equipment, information, tools, or resources to set up a competing business.

2.      Because of their management positions, each of these former employees signed Employment Agreements which identified the confidential and secret nature of the confidential, propriety, and trade secret information to which they were provided access, and the need to protect such information during and after their employment.

3.      These Employment Agreements also prohibited the McClellans and Hoyt, for at least one year, from directly or indirectly: (1) soliciting PIC's employees away from PIC, (2) soliciting or contacting PIC's customers, or (3) doing any work for PIC's customers in competition with PIC. These Employment Agreements also prohibited the McClellans and Hoyt from converting tangible or intangible property belonging to PIC, and required them to return all confidential, proprietary, and trade information to PIC upon termination of employment.

4.      These former employees violated their duties of loyalty to, or their Employment Contracts with, PIC by:

COMPLAINT - 2
ANDB04-000001- 4364955_2



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

a.   Contracting with or working for at least one of PIC's customers before, immediately after, or at least within one year of quitting PIC;

b.   Soliciting PIC's customers to not do business with PIC before, immediately after, or at least within one year of quitting PIC;

c.   Soliciting PIC's employees to quit PIC before, immediately after, or at least within one year of quitting PIC;

d.   Using or converting PIC's equipment, tools, or resources for their own selfish purposes before or after they quit;

e.   Converting, using, or divulging confidential information, good will, trade secrets or proprietary methods for their own selfish purposes before or after they quit;

f.   Interfering with PIC's existing contracts or business expectancies; and,

g.   Enriching themselves through inequitable means to PIC's detriment.

5.   PIC sues for: (1) breach of the McClellans' and Hoyt's Employment Agreements; (2) misappropriation of PIC's trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (3) misappropriation of PIC's trade secrets under Washington's Uniform Trade Secrets Act, RCW 19.108; (4) breach of fiduciary duty and duty of loyalty; (5) tortious interference with business expectancy; (6) conversion; and, (7) unjust enrichment.

6.   Besides money damages, PIC seeks to immediately stop Defendants from their tortious acts (conversion and tortious interference) and their continued violations of their duties of loyalty, their Employment Agreements, and the federal and state laws protecting trade secrets and proprietary information.

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

## II.   THE PARTIES

7.     Plaintiff Precision Industrial Contractors, Inc. is a corporation, organized and existing under the laws of the State of Washington, with its principal place of business in Woodland, WA. PIC is a citizen of the State of Washington.

8.     Defendants Christopher M McClellan and Tami L McClellan are a married couple, residing in Palatka, Florida; they are citizens of the state of Florida.

9.     Tami McClellan was employed with PIC from about July 2018 until she quit, without notice, on February 11, 2019.

10.    Christopher McClellan was employed with PIC from about August 2018 until he quit, without notice, on March 7, 2019.

11.    The McClellans are doing business as a sole proprietorship under the name of "CMC Consulting, LLC." https://secure.dor.wa.gov/gteunauth/_/#2. The McClellans have listed CMC's mailing address as Palatka, Florida, which is where the McClellans reside. The McClellans are therefore not a citizen of the State of Washington.

12.     Defendant Daniel Jason Hoyt is an individual believed to be a citizen of Louisiana. Hoyt was employed with PIC from about July 2018 until he quit, without notice, on February 11, 2019. After quitting PIC, Hoyt helped to form and/or is an employee, of Defendant Alpha, which is affiliated with or subsidiary of Defendant Jack R. Gage Refrigeration, Inc. Hoyt is not a citizen of the State of Washington.

13.    Defendant Jack R. Gage Refrigeration, Inc. ("Gage Refrigeration") is a Utah corporation. According to the Utah Secretary of State, Gage Refrigeration is doing business as "Alpha Omega Industrial." Gage Refrigeration has listed Alpha's address as 695 W 1700 S Bldg 15 Logan, Utah, which is the same address as Gage Refrigeration. https://secure.utah.gov/bes/details.html?entity=11244099-0151. Gage Refrigeration is therefore not a citizen of the State of Washington.

COMPLAINT - 4
ANDB04-000001- 4364955_2

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

14.     Alpha is Hoyt's business partner, joint venture, business associate or employer of Defendant Hoyt, and it was the successful bidder of several jobs at the Port Townsend Paper Corporation site in Port Townsend, Washington.

## III.     JURISDICTION AND VENUE

15.     Under the Defend Trade Secrets Act of 18 U.S.C. § 1836(c) and 28 U.S.C. § 133, this Court has original jurisdiction. This Court also has supplemental jurisdiction over the other claims under 28 U.S.C. § 1367.

16.     This Court also has jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) because (1) Plaintiff is a citizen of Washington and each of the Defendants are not, and (2) the amount in controversy exceeds $75,000.

17.     Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.     FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.     PIC's Business and Confidential, Proprietary, and Trade Secret Information.**

18.     Founded in 1989, PIC is a heavy industrial contractor that provides project management, design and engineering, fabrication and machining, installation, and maintenance services to its industrial clients. PIC also provides skilled workers to other companies and employers on an as-needed basis. PIC operates nationwide and across a wide variety of industries.

19.     While its primary focus is on customers within the pulp and paper, corrugating/packaging, food processing and asphalt roofing industries, PIC serves a variety of industrial customers, including ship builders and solid waste processing plants. As such, PIC's competition is fairly narrow and requires intimate knowledge of their customers' business plans and needs. Depending on operation needs, PIC employs



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

between 150 and 300 employees. PIC uses a handful of managers to oversee its operations, including customers, employees, and projects.

20.     PIC has developed, acquired, and owns confidential and proprietary information not available to the public, including, but not limited to:

    a.     PIC's customer lists and information, including information related to its customers' business affairs, special needs, contact personnel, preferred methods of doing business, repair and maintenance schedules, unique fabrication needs, and work history;

    b.     Prospective customers within the industry;

    c.     Bid sheets, internally created strategies, formulas, and processes;

    d.     Costs, including internal and external costs for labor, supplies and materials, transportation, engineering, and fabrication;

    e.     Profitability and margins;

    f.     Financial and other pricing information;

    g.     Specialized vendors and suppliers; and

    h.     PIC's manuals, methods, forms, techniques, and systems developed for its own use.

(Collectively, the "Confidential Trade Secret Information").

21.     Over its 30 years in business, PIC has also developed unique and special relationships with its customers through a variety of methods. This includes sending employees to trade shows to meet potential customers, identifying key contact personnel for customers, and developing and maintaining personal relationships with key contact personnel.

22.     For example, most jobs that PIC bids are not public bids. Rather, PIC's knowledge of its customers' needs (maintenance schedules, repairs, re-fabrication,

COMPLAINT - 6
ANDB04-000001- 4364955_2

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

upgrades, or expansions) and its relationships and contacts with key personnel results in opportunities for new or expanded work. Maintaining relationships with key contact personnel is important to PIC's efforts in obtaining work from its customers or to develop new customers. PIC also researches and identifies its customers' special needs, history, and methods of doing business to allow PIC to proactively offer its services to customers.

23.     Besides its customer lists and information developed through years of special marketing, relationship building, and operations, PIC has also developed bid sheets, strategies, formulas, and processes to use in the bidding process. PIC has developed unique bidding formulas and processes that allow it to accurately bid projects using PIC's own labor, trucking, fabrication, and engineering costs. This includes internally created software or processes designed specifically for PIC's bidding practices.

24.     PIC has also negotiated preferred pricing from many of its vendors, suppliers, or subcontractors, allowing it to carefully, economically, and accurately bid on projects and maintain comfortable profit margins.

25.     PIC takes steps to limit those employees' allowed access to the Confidential Trade Secret Information. This includes limiting access to certain need-to-know information as well as computer passwords.

26.     PIC also communicates to its employees the need to not divulge this information to others, especially its competitors. This data and information is available to employees only by virtue of their employment with PIC and their specific job duties and is to be used solely to further PIC's business, customer sales, and good will. A competitor, who has access to this data and analysis, would have an unfair competitive advantage that could enable them, for example, to use PIC's own data and analysis, to

L A N D E R H O L M

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

underprice PIC's bids, and to better service and divert current and prospective customers.

27.     PIC has spent, and continues to spend, significant time and money in developing, improving and protecting its Confidential Trade Secret Information. This Confidential Trade Secret Information has independent economic value because it consists of information that is neither generally known nor readily ascertainable within the industry through lawful means. PIC has made reasonable efforts to ensure the secrecy of its Confidential Trade Secret Information, and the Confidential Trade Secret Information constitutes a trade secret that merits legal protection from unauthorized disclosure, misappropriation, dissemination, and/or use.

**B.     PIC Hires Tami McClellan, Chris McClellan, and Jason Hoyt, each of whom signed Employment Agreements.**

28.     Because it had secured a few large projects, PIC suddenly needed to hire additional employees, including welders, journeymen, pipe fitters, fabricators, and managers. Starting in July 2018, PIC hired Tami McClellan, Chris McClellan, and Jason Hoyt within a short time period.

29.     PIC first approached Chris McClellan about coming to work to assist in operations. Mr. McClellan said he would be interested once he had finished another project he was working for on behalf of another company, but recommended that PIC hire his wife, Tami McClellan to help recruit other employees. Mr. McClellan also recommended that PIC hire his friend and former business colleague, Jason Hoyt.

30.     In about July 2018, PIC hired Mrs. McClellan as a recruiter. Her job duties included recruiting, hiring, assigning, and training new employees. She was also responsible for hiring specialized employees for PIC's customers. As such, Mrs. McClellan was provided access to PIC's customer contact information, training

COMPLAINT - 8
ANDB04-000001- 4364955_2

**LANDERHOLM**
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

material, compliance material, and methods for hiring, training, and certifying employees.

31.     Because she was part of the management team, and would be provided access to confidential information and special access to customers, PIC insisted upon Mrs. McClellan signing an Employment Agreement, which she signed on July 3, 2018. A redacted copy of this Agreement is attached as **Exhibit A.**

32.     PIC also hired Hoyt in about July 2018. PIC had recently secured a large project in Idaho. PIC hired Hoyt along with 20 to 25 employees who Hoyt had previously supervised in about July 2018.

33.     PIC initially hired Hoyt to be a superintendent for this job. However, within about three weeks, PIC promoted Hoyt to general superintendent. Besides a yearly salary, PIC agreed to pay Hoyt bonuses based on "generated sales." He was also provided additional bonuses for meeting certain profit margins on projects.

34.     As general superintendent, Hoyt was provided access to most of PIC's confidential and proprietary information (described above) related to marketing, customers (key contacts for generating new sales), job lists, bidding information, costs, vendors and suppliers and other confidential information. PIC also provided him access to existing and new customers. He also continued to recruit and supervise new and existing employees.

35.     Because he was hired into management, and would be provided access to trade secrets and other confidential information, PIC insisted upon Hoyt signing an Employment Agreement. Attached as **Exhibit B** is a redacted copy of this Agreement, which Hoyt signed on August 14, 2018.

36.     PIC next hired Chris McClellan in about September 2018, after he had completed a project for his previous employer.

COMPLAINT - 9
ANDB04-000001- 4364955_2

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

37.     PIC initially hired Mr. McClellan to assist with overall operations out of the Woodland, Washington office. Besides marketing, customer contacts, bidding, contracting and supervising jobs and employees, Mr. McClellan was initially provided access to PIC's business records because PIC intended to have him start to help manage business development and strategies.

38.     Because he would be hired to a key management position, and therefore would have access to existing and potential customers, and most of PIC's trade secrets and other confidential and proprietary information (see above), PIC insisted upon Mr. McClellan signing an Employment Agreement, which he did on September 15, 2018. A redacted copy of this Agreement is attached as **Exhibit C.**

39.     After a few months, and due to management needs and issues, PIC assigned Mr. McClellan to serve as a project manager for its longtime customer, the Port Townsend Paper Corporation ("Port Townsend Paper") in Port Townsend, Washington. PIC knew Port Townsend Paper had a large project on the horizon, and Mr. McClellan was familiar with the paper company and its people. On January 7, 2019, Mr. McClellan submitted a written proposal on behalf of PIC to Port Townsend Paper, which Port Townsend Paper accepted. A redacted copy of this proposal is attached as **Exhibit D.**

40.     Under this contract between Port Townsend Paper and PIC (Exhibit D), Mr. McClellan would be the project manager for a multimillion dollar mill expansion project known as the OCC expansion. The OCC expansion project involved replacing pulp machinery used to break down and recycle old corrugated containers. This project would be completed in six to eight phases. This project was expected to generate several segments of work, most if not all of which could be performed by PIC. Since Mr. McClellan was the project manager, PIC expected to be awarded much of the work, assuming it was the lowest most responsible bidder.

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

**C.** **The Employment Agreement placed conditions, restrictions and prohibitions on the McClellans' and Hoyt designed to protect PIC.**

41.     The McClellans' and Hoyt's Employment Agreements (Exhibits A, B and C) all contain these provisions regarding non-disclosure of confidential and proprietary information, non-solicitation of PIC's employees, and non-solicitation and non-servicing of PIC's customers and clients:

> 5.     **Property of Employer.** Employee acknowledges that from time to time in the course of performing his or her duties under this Agreement, he/she shall have the opportunity to inspect and use certain property, both tangible and intangible, of the employer. Employee hereby agrees that said property shall remain the exclusive property of the Employer and Employee shall have no right proprietary interest in such property, whether tangible or intangible, including, without limitation, the Employer's customer and employee lists, business and marketing plans, books of accounts, computer programs and similar property.
>
> 6.     **Confidential and Proprietary Information**. Employee recognizes that, as a result of his/her employment hereunder, he/she will have access to confidential information, trade secrets, proprietary methods and other data which is the property of and integral to the operation and success of Employer and therefore agrees to be bound by the provision of this Agreement, which the parties agree and acknowledge to be reasonable . . . Employee acknowledges that he/she will obtain unique benefits from his/her employment and the provisions contained in This Agreement are reasonably necessary to protect the Employer['s] legitimate business interests, which include, among other things, the substantial relationships between the Employer and their clients referral sources, customers, employees and vendors as well as the goodwill established with these customers and individuals over a protracted period.
>
> 7.     **Trade Secrets.** Employee agrees that he/she will not divulge to any person, nor use to the detriment of the Employer nor use in any business competitive with or similar to any business of the Employer, at any time during the term of this

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

Agreement or thereafter, any of the Employer['s] trade secrets and or confidential and proprietary information. . . .

8.     **Return of Confidential Information.** Employee agrees that at the time of leaving his/her employment, he/she will deliver to Employer and not keep or deliver to anyone else, any and all notebooks, files, records, memoranda, documents and, in general, any and all material relating to the Employer's business or constituting the Employer's property including any trade secret information or confidential and proprietary information.

9.     **Non-Solicitation of Employees**. Employee covenants that during the one (1) year period immediately following the termination of his/her employment for whatever reason[,] Employee will not either directly nor indirectly induce or attempt to induce any employee of the Employer to terminate his or her employment or to go to work for any other employer.

10.     **Non-Solicitation and Non-Servicing**. Employee agrees that during the term of his/her employment hereunder and for a period of one (1) year thereafter} Employee} shall not} directly or indirectly, solicit or contact any customer or client of Employer with a view to inducing or encouraging such client or customer to discontinue or curtail any business relationship with Employer within territories in which Employer conducts business. Employee further agrees that during his/her employment hereunder, and for a period of one (1) year thereafter, he/she will not, directly or indirectly, request or advise any customer or client of Employer to withdraw, curtail or cancel its business with Employer. Employee further agrees that during his/her employment hereunder, and for a period of one (1) year thereafter} he/she will not} directly or indirectly service any customer or client of Employer within the Territory while in the course of engaging in any business or undertaking that is in competition with the business of Employer . . . and will not, within the Territory] directly or indirectly divert any business away from Employer. Employee agrees that these provisions are necessary in order to protect the goodwill of Employer and inside information about Employer's operation.

42.     During their employment with PIC, the McClellans and Hoyt had access to, among other confidential, proprietary, and trade secret information, PIC's customers,



invoices, bidding procedures and formulas, vendor and supplier information, pricing strategies, profit calculations, customer lists and contact information, and prospective customer information.

43.     While they were employed by PIC, the McClellans and Hoyt were obligated by law and their Employment Agreements to devote their full and utmost loyalty and good faith to PIC, and were prohibited from engaging in any actions or conduct in violation of these duties, or which competed with, or tended to harm PIC, and/or which would assist or further the interests of a competitor.

44.     The McClellans and Hoyt did not honor their Employment Agreements. In fact, the McClellans and Hoyt orchestrated their exit from PIC, but only after they took PIC's confidential, proprietary, and trade secret information and solicited employees to work for them.

**D.      The McClellans and Hoyt orchestrate their exit from PIC to set up their competing businesses.**

45.     The McClellans and Hoyt all suddenly resigned their employment with PIC within several weeks of each other beginning in early-February 2019.

46.     Toward the end of 2018, PIC discovered that several workers Hoyt brought with him from Louisiana for the Idaho job had falsified timecards. PIC terminated these employees. Hoyt claimed to be upset about PIC's decision and suddenly quit, without notice, on February 11, 2018.

47.     Mrs. McClellan also quit suddenly, and without notice, on February 11, 2019, the same day as Hoyt. As described below, she quit the morning after she had returned from attending a week-long and highly-valuable training session in Florida.

48.     Before leaving PIC, Mrs. McClellan totally wiped her company computer and cellphone to prevent PIC from examining what was stored on those devises.

COMPLAINT - 13
ANDB04-000001- 4364955_2

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

49.     Adding insult to injury, PIC had paid for (all expenses paid) Mrs. McClellan to travel to Florida to attend an expensive week-long training session at the National Center for Construction Education and Research in Florida in order to become Certified as a Master Trainer and as an Assessment Administrator.

50.     Besides making her more marketable, these certifications are used in the industry to assist construction companies, like the company that she and her husband had formed even before they quit PIC, to be more valuable in recruiting and training workers. These certificates also give companies a competitive advantage. Despite knowing she would quit immediately after attending, Mrs. McClellan shamefully permitted PIC to pay for her, including her salary, to attend the training sessions to earn certificates she knew would have no value to PIC.

51.     Hoyt and Mrs. McClellan left PIC together. Indeed, Hoyt helped Mrs. McClellan packed up her personal belongings and moved her to Florida.

52.     After his wife suddenly quit, PIC asked Mr. McClellan if he had any intentions of also quitting. He assured PIC he had no intentions of leaving, which turned out to be false.

53.     On March 6, 2019, Mr. McClellan notified PIC that he was resigning. He also announced that he had started his own company called CMC Consulting LLC. Mr. McClellan notified PIC that Port Townsend Paper had decided to terminate its personnel services contract with PIC and instead hired Mr. McClellan to do the exact same job through his new company, despite the clear prohibition in his Employment Agreement that prevented him from servicing a PIC customer for one year following his departure from PIC.

54.     The timing was not coincidental; PIC was already in discussions with Port Townsend Paper about performing work on the OCC project.

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

**E.    After quitting PIC, Mr. McClellan starts to reject PIC's bid and instead award them to Hoyt's new company, Alpha Omega.**

55.    Mr. McClellan continued to serve as the project manager for Port Townsend Paper OCC expansion project under his start-up company. PIC bid on several segments of the job, but learned that Mr. McClellan had awarded these segments to a new company named Alpha Omega, and that Hoyt owned, was employed by, or was associated with this company. PIC was only awarded one project, which involved erecting steel.

56.    This was quite a change because, over the past several years, PIC had secured approximately 75% of Paper Townsend Paper's work. It seemed clear that, after Mr. McClellan had quit PIC and was working for himself, PIC could no longer secure jobs for which it had customarily secured.

57.    PIC's employees working at Port Townsend Paper soon noticed Hoyt was working at the Port Townsend Paper site under the name of Alpha, in violation of his Employment Agreement. Hoyt solicited at least two of PIC employees to leave PIC and join Alpha to work on the Port Townsend Paper job site for "his company." Hoyt told one employee that he could "name their price," and Alpha would hire him immediately. Hoyt's actions directly violated his Employment Agreement with PIC.

58.    Hoyt further told a PIC employee that PIC's bid on the steel fabrication phase was exactly $180,000 below the next lowest bidder and that PIC's timeline for completing the work was impossible. Because, under industry practices, Hoyt should never had access to this bidding information and because PIC had historically secured most of the other Port Townsend Paper jobs, PIC has good reason to believe that Mr. McClellan is wrongfully sharing PIC's confidential bids with Hoyt to allow Hoyt to under-cut PIC's bids.

/ / /

/ / /

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

**F.      PIC investigation uncovers violations committed by the McClellans.**

59.      After the McClellans and Hoyt all quit and began to compete against PIC in violation of their Employment Agreements, PIC began an investigation.

60.      Unbeknownst to PIC, and prior to their resignations, the McClellans and Hoyt downloaded or copied PIC's confidential and proprietary documents and information, Confidential Trade Secret Information, and other property and information belonging to PIC. The McClellans and Hoyt did this by surreptitiously sending emails containing PIC's Confidential Trade Secret Information and other information, from their PIC email accounts to their personal email accounts. This conduct by the McClellans and Hoyt was improper and unlawful, and was an attempt to steal PIC's information and to conceal their conduct to provide an unlawful competitive advantage to the McClellans, Hoyt, and Alpha.

61.      PIC has reviewed some of the McClellans' and Hoyt's emails on PIC's systems to uncover the following facts:

  i.      On January 31, 2019, before the McClellans or Hoyt had quit PIC, the McClellans requested and obtained a proposed contract document from Port Townsend Paper because the McClellans were planning to approach Port Townsend Paper about terminating its project management contract with PIC in favor of allowing Mr. McClellan to contract directly with Port Townsend Paper.

  ii.     On February 5, 2018, while the McClellans were still employed by PIC, the McClellans submitted a proposed bid to have CMC replace PIC as Port Townsend Paper's contract manager. Attached as **Exhibit E** is a redacted copy of that email and proposal. It is clear that the McClellans simply "cut and pasted"

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

PIC's January 7, 2019 proposal (Exhibit D) into their February 5, 2019 proposal (Exhibit E); they simple changed the letter head and footer to identify their new company. And all of this occurred before either of them had quit PIC.

iii.   On February 14, 2019, Mr. McClellan used PIC's computers to apply to Hall and Company to obtain insurance for his new company, CMC Consulting, a copy of which is attached as **Exhibit F**. Mr. McClellan represents that his company will "commence operations" on February 13, 2019, which is right after he assured PIC that we was not leaving PIC and long before he actually quit.

iv.   On February 27, 2019, the McClellans submitted another proposal to Port Townsend Paper on behalf of CMC. Mr. McClellan was still an employee of PIC when he submitted this proposal. A copy of this proposal is attached as **Exhibit G,** and explains why the McClellans were submitting a new proposal**:** "This proposal is 14,000 less than my previous proposal due to fewer weeks while I was working out my insurance policies. . . ."

v.   On March 5, 2019, still before he had quit PIC, Mr. McClellan submitted an invoice to Port Townsend Paper (attached as **Exhibit H**) on behalf of his new company, and apparently received partial payment from Port Townsend Paper.

vi.   In other words, the McClellans set up their competing business, convinced Port Townsend Paper to terminate its contract with PIC and to contract with their newly formed entity even before Mr. McClellan had quit PIC.

COMPLAINT - 17
ANDB04-000001- 4364955_2



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

**G.     PIC serves the Defendants with a Notice of Cease and Desist.**

62.     On August 20, 2019, PIC, through its lawyers, served the McClellans and Hoyt with separate Cease and Desist letters, copies of which are attached as **Exhibits I** and **J.**

63.     The McClellans never responded and are continuing to work as project managers on the Port Townsend Paper OCC project in direct violation of their Employment Agreements.

64.      Hoyt responded on August 20, 2019, asking for a copy of the Employment Agreement, which PIC provided the following day. Hoyt has not otherwise responded but has continued to work at Paper Townsend Paper Mill. Plaintiff also has information and belief that Hoyt has solicited business from McKinley Paper Company in Port Angeles, Washington, which is a potential customer of PIC.

65.     On August 21, 2019, a business associate of Hoyt responded to Plaintiff's cease and desist letter by claiming that Hoyt was working for "JRG Refrigeration."

66.     On August 21, 2019, Defendant Gage Refrigeration requested a copy of Hoyt's Employment Agreement, which was provided, and promised to have its attorney contact PIC's attorney. Despite this promise, PIC has heard nothing more from any of the Defendants.

67.     Because of Defendants' conduct, PIC is informed and believes it has lost a substantial amount business, including five or six phases of work on the OCC project. Defendant Hoyt even bragged to a PIC employee he had obtained $58 million in business that would have otherwise been awarded to PIC.

68.     The McClellans' and Hoyt's breaches and violations of law and duty, as alleged herein, have damaged and will damage PIC in that they harm and tend to harm PIC by damaging PIC's business, good will, interfering with its customer and vendor

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

relationships, and resulting in diversion and loss of sales. PIC has suffered, and will continue to suffer, lost sales, loss in the value of its relationships, and will be forced to incur attorneys' fees and other costs to protect its interests. PIC's good will with customers has been damaged and interfered with and its reputation harmed.

69.     Defendants' actions reflect their blatant disregard for their legal obligations and evidences intent to continue with these violations.

### FIRST CAUSE OF ACTION
**Misappropriation of Trade Secrets under the Defend Trade Secrets Act
(18 U.S.C. § 1836, et seq.)
(Against all Defendants)**

70.     PIC repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

71.     PIC owned and possessed certain confidential, proprietary, and trade secret information, as alleged above.

72.     This confidential, proprietary, and trade secret information includes, but is not limited to, PIC's customer lists and information, including information related to its customers' business affairs, special needs, contact personnel, preferred methods of doing business, repair and maintenance schedules, unique fabrication needs, and work history; prospective customers within the industry; bid sheets, internally created strategies, formulas, and processes; costs, including internal and external costs for labor, supplies, materials, transportation, engineering, and fabrication; profitability and margins; financial and other pricing information; specialized vendors and suppliers; and PIC's manuals, methods, forms, techniques, and systems developed for its own use. This information is and was a trade secret belonging to PIC at all relevant times. PIC has taken reasonable measures to keep such information secret and confidential.

73.     This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily

COMPLAINT - 19
ANDB04-000001- 4364955_2


LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Since PIC typically only bids on private jobs, its bids are not released to the public.

74.    In violation of PIC's rights, the McClellans and Hoyt misappropriated this confidential, proprietary, and trade secret information without PIC's consent or authorization and in the improper and unlawful manner as alleged herein. Defendant Alpha knowingly and intentionally misappropriated PIC's confidential, proprietary, and trade secret information by receiving and utilizing this information and participating in the McClellans' and Hoyt's misappropriation of PIC's confidential, proprietary, and trade secret information as alleged herein.

75.    Defendants' misappropriation of the confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

76.    On information and belief, if the McClellans' and Hoyt's conduct is not remedied, and if the McClellans, Hoyt, and Alpha are not enjoined, Defendants will continue to misappropriate, disclose, and use for their own and for Alpha's benefit, and to PIC's detriment, PIC's confidential, proprietary, and trade secret information.

77.    As the direct and proximate result of Defendants' conduct, PIC has suffered and, if the Defendants' conduct is not stopped, will continue to suffer, irreparable injury as well as significant damages in an amount to be proven at trial.

78.    Because PIC's remedy at law is inadequate, PIC seeks, besides its damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. PIC's business is reliant on its trade secret materials, business reputation, and its ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

79.     The McClellans' and Hoyt contractually agreed in the Employment Agreements that in the event of a breach of the Agreements, PIC would be entitled to equitable and injunctive relief.

80.     PIC will likely succeed on the merits because of Defendants' blatant, willful, and malicious misappropriation of PIC's trade secrets and other property, through the improper and unlawful methods, as alleged herein.

81.     PIC has been damaged by the foregoing, and is entitled to injunctive relief and its damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorney's fees.

## SECOND CAUSE OF ACTION
### Violation of Trade Secrets under the Washington Uniform Trade Secrets Act
### (Against all Defendants)

82.     PIC repeats, realleges, and incorporates by reference the prior allegations as if set forth herein.

83.     PIC owned and possessed certain confidential, proprietary, and trade secret information, as alleged above.

84.     This confidential, proprietary, and trade secret information includes, but is not limited to, PIC's customer lists and information, including information related to its customers' business affairs, special needs, contact personnel, preferred methods of doing business, repair and maintenance schedules, unique fabrication needs, and work history; prospective customers within the industry; bid sheets, internally created strategies, formulas, and processes; costs, including internal and external costs for labor, supplies, materials, transportation, engineering, and fabrication; profitability and margins; financial and other pricing information; specialized vendors and suppliers; and PIC's manuals, methods, forms, techniques, and systems developed for its own use.

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
T: 360-696-3312 • F: 360-696-2122

85.     PIC made reasonable efforts to keep secret this confidential, proprietary, and trade secret information confidential, by, among others, limiting access to confidential information and limiting computerized access.

86.     PIC's confidential, proprietary, and trade secret information derives independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

87.     In violation of PIC's rights, the McClellans and Hoyt misappropriated this confidential, proprietary, and trade secret information without PIC's consent or authorization and in the improper and unlawful manner as alleged herein. Defendant Alpha knowingly and intentionally misappropriated PIC's confidential, proprietary, and trade secret information by receiving and utilizing this information and participating in the McClellans' and Hoyt's misappropriation of PIC's confidential, proprietary, and trade secret information as alleged herein.

88.     As the direct and proximate result of Defendants' misappropriation as aforesaid, PIC has suffered and, if Defendants' conduct is not enjoined, will continue to suffer irreparable injury, as well as damages in an amount to be determined at trial.

89.     Because PIC's remedy at law is inadequate, PIC seeks, besides its damages, temporary, preliminary, and permanent injunctive relief to recover and protect its trade secrets and other legitimate business interests.

90.     PIC will likely succeed the merits because of Defendants' blatant misappropriation of trade secrets as set forth herein.

91.     Defendants' acts were malicious, fraudulent, and oppressive, and were done with conscious disregard of PIC's rights, all within the meaning of RCW 19.108, because Defendants misappropriated PIC's trade secret information intentionally and knowingly and with a deliberate intent to benefit themselves and injure PIC's business.

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

PIC is entitled to its damages, in an amount to be determined at trial, and injunctive relief, and an award of punitive damages and/or treble damages and attorney's fees under RCW 19.108.040.

### THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty and Duty of Loyalty
### (Against the McClellans and Hoyt)

92.     PIC repeats, realleges, and incorporates by reference the prior allegations as if set forth herein.

93.     As employees of PIC, the McClellans and Hoyt owed PIC their undivided loyalty and had to act with the utmost good faith, and in the best interests of PIC.

94.     PIC was entitled to place its trust and confidence in the McClellans and Hoyt and to expect them to act with the utmost good faith toward it in carrying out the business of PIC.

95.     PIC relied on the McClellans' and Hoyt's loyalty and integrity and their faithful performance of their duties and responsibilities.

96.     The McClellans took advantage of PIC's faith by not performing their duties to PIC, by taking confidential, proprietary, and trade secret information before their departure.

97.     Hoyt took advantage of PIC's faith by not performing his duties to PIC, by acting in conflict of interest, by engaging in business for his own account and for PIC's competitor, Alpha, and in competition with PIC, all while employed by PIC, and by deceiving PIC and concealing his improper conduct.

98.     The McClellans and Hoyt knowingly and willfully breached their duty of loyalty to PIC by scheming to deceive and defraud PIC, by misappropriating and stealing PIC's confidential and trade secret information and other property.

LANDERHOLM

805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

99.     Hoyt also used PIC's confidential and proprietary information to obtain bidding information for Alpha, by soliciting PIC's customers on his own behalf and on behalf of Alpha, and diverting and misappropriating PIC's trade secrets, confidential and proprietary business information, and customers.

100.    As a direct and proximate result of the McClellans' and Hoyt's disloyalty to PIC and breach of their duties, PIC has been and is being harmed. PIC is entitled to its damages, in an amount to be determined at trial, and disgorgement from the McClellans and Hoyt, and the forfeiture and return of, all monies and compensation paid to the McClellans and Hoyt during their period of disloyalty, the exact amount to be determined at trial. PIC is further entitled to injunctive relief against the McClellans and Hoyt and all those acting in concert or participation with them, remedying their past improper conduct, and preventing such conduct in the future.

101.    The McClellans and Hoyt are, on information and belief, still in possession of PIC's confidential and trade secret information, and, on information and belief, can access and use this information on behalf of Alpha.

102.    As a direct and proximate result of the McClellans' and Hoyt's breach of their duty of loyalty, PIC has been irreparably injured, and has suffered damages in an amount to be determined at trial. Because its remedy at law is inadequate, PIC seeks, besides its damages, preliminary and permanent injunctive relief, enjoining the McClellans and Hoyt, and all those acting in concert or participation with them, from further improper conduct, and from dealing with the customers whose confidential information they misappropriated, and further remedying the improper conduct as alleged above.

/ / /

/ / /

/ / /

COMPLAINT - 24
ANDB04-000001- 4364955_2

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

**FOURTH CAUSE OF ACTION**
**Tortious Interference with Business Expectancy**
**(Against the McClellans and Hoyt)**

103.   PIC repeats, realleges, and incorporates by reference the prior allegations as if set forth herein.

104.   PIC had a reasonable business expectancy and ongoing relationships with its customers. PIC had a reasonable expectation in engaging in business with, and in earning profits in connection with sales to, (a) its existing customers, such as Port Townsend Paper, with whom the McClellans and Hoyt dealt, and (b) customers who were involved in negotiations and discussions with PIC and/or with the McClellans and Hoyt while they were employed by PIC.

105.   The McClellans and Hoyt knew of PIC's business relationship and business expectancy from its customers.

106.   The McClellans and Hoyt intentionally, and in violation of their duties with PIC, interfered with that expectancy by diverting existing and prospective accounts, and by other improper means. The McClellans and Hoyt engaged in this diversion through fraudulent and deceitful conduct, such as that alleged herein, and other conduct that may be discovered.

107.   As a direct and proximate result of the McClellans' and Hoyt's improper conduct, PIC has suffered damages including lost profits, the exact amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Conversion**
**(Against the McClellans and Hoyt)**

108.   PIC repeats, realleges, and incorporates by reference the prior allegations as if set forth herein.

109.   PIC owned and possessed reports, customer lists and information, and bidding formulas and spreadsheets, both in physical and electronic form, that were

COMPLAINT - 25
ANDB04-000001- 4364955_2



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

contained and stored on PIC's password protected computers. These documents were the exclusive property of PIC.

110.    The McClellans and Hoyt intentionally and substantially accessed, interfered, and took possession of PIC's property by converting, stealing, and taking PIC reports, customer lists and information, and bidding spreadsheets and formulas, without PIC's knowledge or consent. On information and belief, Hoyt then transferred these documents to Alpha.

111.    As a direct and proximate result of McClellans' and Hoyt's conduct, PIC suffered and continues to suffer damages including, but not limited to, the costs of investigating the Defendants' conduct and the cost of taking corrective action based on the McClellans' and Hoyt's conduct, such amounts to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Breach of Contract**
**(Against the McClellans and Hoyt)**

112.    PIC repeats, realleges, and incorporates by reference the prior allegations as if set forth herein.

113.    PIC entered into Employment Agreements with the McClellans and Hoyt, which were supported by mutual consideration. PIC performed all conditions and obligations on its part under each respective Employment Agreement mentioned.

114.    Christopher McClellan and Tami McClellan breached the terms of their Employment Agreements by soliciting and servicing PIC's customer, Port Townsend Paper; by encouraging Port Townsend Paper to discontinue or curtail its relationship with PIC; by diverting business away from PIC; by taking and using PIC's confidential, proprietary, and trade secret information; and by, upon information and belief, inducing or attempting to induce an employee of PIC to terminate their employment.

LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

115.    Daniel Jason Hoyt breached the terms of his Employment Agreement by soliciting and servicing PIC's customer, Port Townsend Paper; by diverting business away from PIC; by taking and using PIC's confidential, proprietary, and trade secret information; and by inducing or attempting to induce an employee of PIC to terminate their employment or to go to work for Alpha.

116.    As a direct and proximate result of the McClellans' and Hoyt's breaches of contract, PIC has suffered damages and requests damages as a result of these breaches, in an amount to be proven at trial, but in no event less than $75,000.

### SEVENTH CAUSE OF ACTION
### Unjust Enrichment
### (Against All Defendants)

117.    PIC repeats, realleges, and incorporates by reference the prior allegations as if set forth herein.

118.    Because of the actions set forth in this Complaint, the Defendants would be unjustly enriched if they were allowed to retain or profit from their unlawful acts set forth in this Complaint.

119.    As a direct and proximate result of Defendants' conduct, PIC suffered and continues to suffer damages including, but not limited to, the wages paid to the McClellans and Hoyt, lost profits from jobs that the McClellans, Hoyt, and Alpha took from PIC, and the cost of taking corrective action based on Defendants' conduct, such amounts to be determined at trial.

120.    PIC is entitled to damages to compensate for unjust enrichment in an amount to be established at trial.

### JURY DEMAND

121.    Plaintiff seeks a trial by jury of all issues so triable.

COMPLAINT - 27
ANDB04-000001- 4364955_2



805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122

WHEREFORE, Plaintiff Precision Industrial Contractors, Inc. respectfully demands judgment in its favor and against Defendants as follows:

A.      Awarding damages as described in each of the above claims, in favor of PIC and against Defendants, in amounts to be determined at trial, and further directing forfeiture and disgorgement of all amounts paid by PIC to Defendants Christopher McClellan, Tami McClellan, and Jason Hoyt during the period of disloyalty.

B.      Granting a temporary and permanent injunction against Defendants, enjoining them from violating their legal duties to PIC, from using, disseminating, disclosing, or misappropriating PIC's confidential, proprietary, and trade secret information, from soliciting, contacting, communicating, or accepting business from or with PIC's existing customers, and directing Defendants to return to PIC all of PIC's confidential, proprietary, and trade secret information and other property.

C.      Awarding exemplary damages in favor of PIC and against Defendants, jointly and severally, in an amount to be determined at trial.

D.      Awarding PIC pre-judgment and post-judgment interest, and its attorneys' fees, costs and other expenses incurred in this action;

E.      Granting PIC such other and further relief as this Court deems just and proper.

DATED this 29th day of August, 2019.

LANDERHOLM, P.S.

*/s/ Phillip J. Haberthur*
BRADLEY W. ANDERSEN, WSBA #20640
PHILLIP J. HABERTHUR, WSBA #38038
JAMES P. SIKORA, WSBA #46226
Of Attorneys for Plaintiff,
Precision Industrial Contractors, Inc.

COMPLAINT - 28
ANDB04-000001- 4364955_2



LANDERHOLM
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA  98666
T: 360-696-3312 • F: 360-696-2122