1

2

3

4

5          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
6                   AT TACOMA

7   PRECISION INDUSTRIAL
    CONTRACTORS INC.,
8
                Plaintiff,
9        v.                                    C19-5810 TSZ

10   JACK R. GAGE REFRIGERATION          ORDER
     INC.; and DANIEL JASON HOYT,
11

12              Defendants.

13          THIS MATTER comes before the Court on the motion for summary judgment

14   filed by Plaintiff Precision Industrial Contractors Inc. ("PIC"), docket no. 85, and by the

15   cross-motion for partial summary judgment filed by Defendant Jack R. Gage

16   Refrigeration Inc. ("JRG"), docket no. 87.  Having reviewed all papers filed in support

17   of, and in opposition to, the motions, the Court enters the following Order.

18   **Background**

19      **1.      Factual Background**

20          PIC provides project management, design, engineering, fabrication, machining,

21   welding, and pipe fitting services and products to industrial clients.  Simensen Decl. at

22

23

ORDER - 1

¶ 3 (docket no. 5).  At some point in 2018, the President of PIC met Chris McClellan, who was then working for a different company, Yates Construction, as a project manager for Port Townsend Paper Corp.  *Id.* at ¶ 12.  PIC asked McClellan to work for PIC to oversee its operations.  *Id.*  McClellan indicated that he was interested in working for PIC, but he needed to first complete a few projects for his current employer.  *Id.*  In the meantime, McClellan requested that PIC hire his wife, Tami McClellan, and his colleague, Defendant Daniel Jason Hoyt.  *Id.* at ¶ 14.  Chris McClellan represented to PIC that Hoyt was an experienced construction manager and project supervisor, as Hoyt had about 27 years' experience working in industrial construction and about 15 years' experience submitting bids for industrial construction projects.  *See id.*; Hoyt Decl. at ¶ 2, Ex. 1 to Defs. Resp. to PIC Mot. for TRO (docket no. 26-1).

In July 2018, PIC hired Hoyt and Tami McClellan.  Simensen Decl. at ¶¶ 18–19 (docket no. 5).  Hoyt was hired as a job superintendent to supervise a large Idaho project, earning $52 per hour.  *Id*.  In August 2018, Hoyt was promoted to general superintendent, becoming a salaried manager with bonus potential for soliciting new clients.  *Id.* at ¶¶ 19–20.  Because part of Hoyt's new position entailed providing bids, estimates, and proposals, Hoyt had access to PIC's confidential information, including PIC's strategies on how to secure winning bids and "special access to information about [its] existing and potential new clients."  *Id.* at ¶ 21.  On August 14, 2018, around the time of Hoyt's promotion, Hoyt signed a new employment agreement containing certain restrictive covenants, including customer and employee non-solicitation provisions, providing that:

ORDER - 2

[D]uring the one (1) year period immediately following the termination of his/her employment . . . Employee will not either directly [or] indirectly induce or attempt to induce any employee of [PIC] to terminate his or her employment or go to work for any other employer. . . .

[D]uring the term of his/her employment hereunder and for a period of one (1) year thereafter[], Employee[] shall not[] directly or indirectly, solicit or contact any customer or client of [PIC] with a view to inducing or encouraging such client or customer to discontinue or curtail any business relationship with [PIC] within territories in which [PIC] conducts business. Employee further agrees that during his/her employment hereunder, and for a period of one (1) year thereafter, he/she will not, directly or indirectly, request or advise any customer or client of [PIC] to withdraw, curtail, or cancel its business with [PIC].

August 2018 Agreement, Ex. A to Defs. Br. ISO Mot. to Dissolve TRO (docket no. 56-1).

In September 2018, PIC hired Chris McClellan as well, who was later assigned to be a project manager for Port Townsend Paper.  Simensen Decl. at ¶¶ 22 & 24 (docket no. 5).  By late 2018, PIC learned that Port Townsend Paper was planning a large, multimillion-dollar expansion project, called the OCC project.  *Id.* at ¶ 25.  For several years leading up to that point, PIC had successfully won about 75 percent of the bids it submitted for Port Townsend Paper's other projects; and PIC's President believed that PIC would secure most of the bids it submitted for the OCC project as well.  *Id.* at ¶ 26. In January 2019, PIC had Chris McClellan submit a proposal to Port Townsend Paper for McClellan to serve as the OCC project manager.  *Id.* at ¶ 27.

Around that same time, in early 2019, Hoyt and Tami McClellan suddenly ended their employment with PIC.  Simensen Decl. at ¶ 28.  After Hoyt left PIC, he went to work for a new company, Alpha Omega Industrial, a related company of Defendant

1  JRG.[1]  Hoyt Decl. at ¶ 20 (docket no. 26-1).  In March 2019, Chris McClellan also ended

2  his employment with PIC to work for his own company, and since that time, he has

3  continued to serve as the OCC project manager for Port Townsend Paper.  Simensen

4  Decl. at ¶¶ 39–40 (docket no. 5).

5       After Hoyt and the McClellans left PIC, PIC submitted five or six bids for the

6  OCC project, but it was awarded only one project.  *Id.* at ¶ 40.  PIC then conducted an

7  investigation into the circumstances of Hoyt's and the McClellans' sudden departure

8  from PIC, and it discovered that Chris McClellan might have solicited Port Townsend

9  Paper as a customer of his new company, even before he had ended his employment with

10  PIC.  Simensen Decl. at ¶ 43 (docket no. 5).

11       **2.    Procedural History**

12       In August 2019, PIC filed this action against the McClellans, Hoyt, and JRG,

13  asserting claims for trade secret violations and other claims, *see* Compl. (docket no. 1),

14  and Defendants asserted counterclaims against PIC, *see* Defs. Answer & Countercl.

15  (docket nos. 36 & 37).  PIC simultaneously filed a motion for a temporary restraining

16  order ("TRO"), docket no. 2, which the Court later granted, thereby restraining

17  Defendants from using any of PIC's trade secrets or confidential information and

18  restraining them from contacting any of PIC's customers.  *See* Order (docket no. 16).

19       In October 2019, the Court, after hearing oral argument and reviewing the parties'

20  supplemental briefing and evidence, denied PIC's motion for a preliminary injunction

21  _____

22  [1] For ease of reference, the Court refers to this corporate Defendant only as JRG.

23

ORDER - 4

1   and granted Defendants' motion for the immediate dissolution of the TRO.  *See* Order

2   (docket no. 66).  The Court concluded that PIC was not likely to succeed on the merits of

3   its claims or suffer irreparable harm, reasoning that PIC's alleged trade secrets were not

4   proprietary.  *Id.* at 2.  The Court further reasoned that there was a "legitimate question"

5   about whether Hoyt's employment agreement is valid; and even then, the plain language

6   of that agreement did not prohibit Hoyt from responding to Port Townsend Paper's

7   invitation to bid for work on the OCC project.  *Id.* at 3.

8        In February 2020, counsel for Hoyt and JRG withdrew their representation of

9   Hoyt but continued to represent JRG, *see* docket no. 72, and Hoyt has proceeded pro se

10  since that time.  In August 2020, pursuant to the parties' stipulation, PIC dismissed all

11  claims against the McClellans, and the McClellans dismissed all counterclaims against

12  PIC.  *See* Order (docket no. 76).  The case was then reassigned to this Court, docket

13  no. 77, and this Court subsequently denied JRG's motion to dismiss, *see* Minute Order

14  (docket no. 78).

15       After the parties failed to timely file any dispositive motions, *see* docket no. 74,

16  the Court directed the parties to show cause why this case cannot be resolved by

17  summary judgment.  *See* Minute Order (docket no. 81).  The Court then struck the

18  scheduled trial date and directed the parties to file simultaneous cross-motions for

19  summary judgment.  *See* Minute Order (docket no. 83).  PIC filed the instant motion for

20  summary judgment ("PIC MSJ"), docket no. 85, on all of PIC's claims; and JRG filed its

21  cross-motion for partial summary judgment ("JRG MPSJ"), docket no. 87, on three of

22  PIC's claims and on JRG's counterclaims.  Hoyt did not file any dispositive motion.

23

ORDER - 5

1    <u>Discussion</u>

2        **1.     Summary Judgment Standard**

3        The Court shall grant summary judgment if no genuine issue of material fact exists

4    and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

5    The moving party bears the initial burden of demonstrating the absence of a genuine issue

6    of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To survive a

7    motion for summary judgment, the adverse party must present affirmative evidence,

8    which "is to be believed" and from which all "justifiable inferences" are to be favorably

9    drawn.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 257 (1986).  When the

10   record, taken as a whole, could not, however, lead a rational trier of fact to find for the

11   non-moving party on matters as to which such party will bear the burden of proof at trial,

12   summary judgment is warranted.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

13   475 U.S. 574, 587 (1986).

14       **2.     PIC's Claims**

15           **A.     JRG's Motion for Summary Judgment on Three of PIC's
                      Claims**

16       JRG moves for partial summary judgment on three of PIC's claims asserted

17   against it:  PIC's two claims for trade secret violations and its claim for unjust

18   enrichment.  PIC cross-moves for summary judgment on these three claims.

19                **i.     Claims for Federal and State Trade Secret Violations
                          (First and Second Causes of Action)**

20

21       To prevail on a claim under the Defend Trade Secrets Act of 2016, 18 U.S.C.

22   § 1836, and under the Washington Uniform Trade Secrets Act, chapter 19.108 RCW, a

23

1  plaintiff must demonstrate that a defendant "misappropriated" its trade secrets.  *See* 18

2  U.S.C. § 1836(b)(1); RCW 19.108.020, 19.108.030.

3      PIC contends that Hoyt—and by extension, JRG—committed federal and state

4  trade secret violations because Hoyt "improperly took PIC's confidential information

5  while he was employed with [PIC], including[] bidding sheets, internal costs (for labor,

6  trucking fabrication and engineering), PIC manuals, and other methods, forms,

7  techniques and systems developed internally and exclusively for PIC's own use."  PIC

8  MSJ (docket no. 85 at 9).  PIC's President declares that during Hoyt's employment with

9  PIC, he was in a position that "included his providing bids, estimates and proposals,"

10 meaning "he had access to [certain] confidential and proprietary information . . . ,

11 including [PIC's] strategies on how to submit winning bids or proposals" and that he had

12 "special access to information about [PIC's] existing and potential new customers,"

13 namely Port Townsend Paper.[2]  Simensen Decl. at ¶ 21 (docket no. 5).  PIC's president

14 also declares that Hoyt was present at meetings during which updates about the progress

15 of the Port Townsend Paper projects were shared.  Third Simensen Decl. at ¶ 12 (docket

16 no. 52).  PIC further cites the deposition testimony of JRG's principal, stating that JRG

17 would not have submitted bids to Port Townsend Paper without Hoyt's involvement.  *See*

18 Gage Dep., Ex. B to Haberthur Decl. (docket no. 53-2 at 8–9).

19

20 _____

21 [2] PIC has clarified that the sole basis for its motion for summary judgment is the fact that Hoyt and JRG "induced Port Townsend Paper to curtail its business relationship with PIC."  *See* PIC Response to JRG MPSJ (docket no. 88 at 9).  PIC does not argue that Hoyt and JRG are liable based on their attempts to

22 secure work for *other* companies.

23

ORDER - 7

1    Although PIC's evidence demonstrates that Hoyt might have had *access* to some

2  of PIC's confidential information, it does not demonstrate that Hoyt *misappropriated* or

3  otherwise used this information for JRG's benefit.[3]  It is undisputed that PIC recruited

4  Hoyt to work for PIC and that Hoyt had decades of "know-how and experience,"

5  including his experience submitting bids for various industrial construction projects.  *See*

6  Hoyt Decl. at ¶¶ 1–6 (docket no. 26-1).  Hoyt further stated that he "had no idea what

7  [PIC's] bids were going to be" for the OCC project and that he used his own expertise

8  and methods to bid on that project on JRG's behalf.[4]  Hoyt Dep., Ex. V to Defs. Br. ISO

9  Mot. to Dissolve TRO (docket no. 56-21 at 6–9).  More critically, PIC investigated

10  whether Hoyt and the McClellans used any of PIC's proprietary information before their

11  employment ended; and although PIC discovered evidence that Chris McClellan might

12  have misappropriated confidential information, *see* Simensen Decl. at ¶¶ 43–44 (docket

13  no. 5), it does not point to any evidence showing that Hoyt misappropriated or acquired

14  trade secrets through "improper means," disclosed those trade secrets to JRG, or used

15  those trade secrets in connection with submitting bids for the OCC project.  *See* 18

16  U.S.C. §§ 1839(5)(A)–(B); RCW 19.108.010(1)–(2).

17

_____

18  [3] "Misappropriation" means, in relevant part, "acquisition of a trade secret of another by a person who
    knows . . . that the trade secret was acquired by improper means; or . . . disclosure or use of a trade secret

19  of another without implied consent by a person who . . . used improper means to acquire . . . the trade
    secret . . . ." 18 U.S.C. §§ 1839(5)(A)–(B); *see* RCW 19.108.010(1)–(2) (providing a nearly identical

20  definition of "misappropriation").

    [4] Although PIC presents evidence that Hoyt knew the exact terms of PIC's bids for the OCC project at

21  some point after PIC secured the work, this evidence does not demonstrate that Hoyt knew those bid
    amounts before he submitted his own bids on behalf of JRG.  *See* Pavelek Decl. at ¶¶ 21–22 (docket

22  no. 4).

23

ORDER - 8

1        Moreover, the fact that Port Townsend Paper is one of PIC's customers is not a

2   protected trade secret under federal or state law.  Port Townsend Paper is publicly

3   displayed on the "Our Clients" webpage on PIC's website.  *See* PIC Website, Ex. L to

4   Defs. Br. ISO Mot. to Dissolve TRO (docket no. 56-12 at 2).  In other words, PIC has not

5   taken any steps to ensure the secrecy of its customers, Port Townsend Paper in

6   particular,[5] and there is no evidence that Hoyt entered a confidentiality agreement to

7   protect PIC's customer list.  *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521–22

8   (9th Cir. 1993); *see also Ed Nowogrowski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 441, 971

9   P.2d 936 (1999) ("Trade secret protection will not generally attach to customer lists

10  where the information is readily ascertainable.").

11       Summary judgment is appropriate on PIC's federal and state claims for trade

12  secret violations because, even viewing the evidence in a light most favorable to PIC, the

13  record could not lead a reasonable juror to find that Hoyt misappropriated or used any of

14  PIC's trade secrets or other confidential information.  The Court therefore DENIES PIC's

15  motion for summary judgment, docket no. 85, and GRANTS JRG's motion for summary

16  judgment, docket no. 87, on PIC's claims for trade secret violations (first and second

17  causes of action) against JRG and DISMISSES these claims with prejudice.

18

19

20

_____

21  [5] PIC argues that "it took reasonable steps to safeguard its customer lists," PIC Response to JRG MPSJ
    (docket no. 88 at 12), but it merely cites evidence that PIC restricted access to its "highly confidential

22  estimating and bidding system," not the fact that certain companies are current or potential customers.
    *See* Simensen Decl. at ¶¶ 8–9 (docket no. 5); *see also* Second Simensen Decl. at ¶¶ 8–9 (docket no. 23).

23

ORDER - 9

### ii.      Unjust Enrichment (Seventh Cause of Action)

Both parties also move for summary judgment on PIC's unjust enrichment claim against JRG.  "Unjust enrichment is a method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it."  *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (citing *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 160, 810 P.2d 12 (1991) ("Unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another.")).  To prevail on this claim, PIC must show that (1) JRG received a benefit, (2) the received benefit is at PIC's expense, and (3) the circumstances make it unjust for JRG to retain the benefit.  *Id.*

In this case, PIC contends that JRG was unjustly enriched because it secured certain segments of work for Port Townsend Paper's OCC project by "undercut[ting] PIC's bid[s] due to [Hoyt's] having access to PIC's bid information and other confidential information," information that Hoyt purportedly "could not have obtained without improper means."  PIC MSJ (docket no. 85 at 18).  PIC also maintains that "Hoyt himself even admitted that [JRG was] enriched at PIC's expense, saying that he secured $58 million of projects that would ha[ve] otherwise gone to PIC."  *Id.* at 18–19.

The Court has already concluded that JRG did not misappropriate any of PIC's confidential information in securing work for Port Townsend Paper.  *See supra*, Section 2(A)(i).  With respect to Hoyt's alleged knowledge of PIC's bid information and whether he secured work that would have otherwise been awarded to PIC, PIC misstates the evidence in the record.  PIC appears to rely on the declaration of one of its employees,

1    stating that Hoyt had "underbid [PIC] on all of the other jobs" for Port Townsend Paper

2    and that "Hoyt knew that [PIC's winning] bid was $180,000 less than the next highest

3    bid." Pavelek Decl. at ¶ 21 (docket no. 4). That evidence, however, merely demonstrates

4    that Hoyt knew the amount of PIC's winning bid *after* PIC had already secured the

5    project—it does not show that Hoyt knew PIC's bid amount *before* he submitted any bids

6    to Port Townsend Paper. Likewise, the fact that Hoyt had allegedly secured work for

7    JRG and bragged to a PIC employee that he "could have secured these contracts" for PIC,

8    had PIC just listened to Hoyt, *see id.* at ¶ 20, is insufficient to show that PIC was entitled

9    to those contracts. Further, the record shows that to secure work for any Port Townsend

10   Paper project, PIC was required to compete against not just JRG, but "[a]ny number of

11   experienced industrial contractors" in an open bidding environment. *See* Scott Decl. at

12   ¶¶ 12–16, Ex. 2 to Defs. Resp. to PIC Mot. for TRO (docket no. 26-2). PIC has failed to

13   show that JRG secured certain projects *at PIC's expense*. *See Young*, 164 Wn.2d at 484.

14        Absent some evidence showing that JRG secured these projects at PIC's expense,

15   or that the circumstances make it unjust for JRG to retain the benefit of the work it

16   performed for Port Townsend Paper, the Court concludes that there are no triable issues

17   of fact on whether JRG was unjustly enriched. The Court DENIES PIC's motion, docket

18   no. 85, and GRANTS JRG's motion for summary judgment, docket no. 87, on PIC's

19   unjust enrichment claim (seventh cause of action) against JRG and DISMISSES this

20   claim with prejudice.

21

22

23

ORDER - 11

1

### B.    PIC's Other Claims Against Hoyt

2    PIC argues that it is entitled to summary judgment on all but one of its claims

3    asserted solely against Hoyt, based on Hoyt's alleged breach of a duty of loyalty (third

4    cause of action), his alleged tortious interference (fourth cause of action), and his alleged

5    breach of contract (sixth cause of action).[6]  Hoyt did not file any opposition brief.

6

### i.    Breach of the Duty of Loyalty (Third Cause of Action)

7    PIC argues that it is entitled to summary judgment on this common law claim for

8    breach of a fiduciary duty or duty of loyalty, based on Hoyt's alleged post-employment

9    solicitation of Port Townsend Paper as a customer.  PIC's claim, however, rests on the

10    assumption that Hoyt solicited Port Townsend Paper "using [PIC's] *confidential*

11    information."  PIC MSJ (docket no. 85 at 12) (emphasis added).  Washington courts have

12    clarified that "an employee may use general knowledge, skills, and experience acquired

13    during the prior employment in competing with a former employer," but he "may not . . .

14    actively solicit customers from a confidential customer list."  *Ed Nowogroski Ins.*, 137

15    Wn.2d at 450.  In light of the Court's conclusion that there is insufficient evidence

16    showing that Hoyt misappropriated PIC's confidential information to secure a bid for

17    Port Townsend Paper, *see supra*, Section 2(A)(i), the Court concludes that genuine issues

18    of fact remain on whether Hoyt's conduct amounted to a breach of his duty of loyalty to

19    PIC.  PIC's motion for summary judgment, docket no. 85, on this claim (third cause of

20    action) against Hoyt is DENIED.

21    _____

22    [6] PIC expressly does not move on its conversion claim against Hoyt, *see* PIC MSJ (docket no. 85 at 20).

23

ii.     **Tortious Interference (Fourth Cause of Action)**

PIC also moves for summary judgment on its tortious interference claim against

Hoyt, arguing that (1) PIC had a business expectancy with respect to securing certain

projects for Port Townsend Paper, (2) Hoyt knew of that expectancy, (3) Hoyt

intentionally interfered with that expectancy or caused its termination, (4) Hoyt interfered

for an improper purpose or using improper means, and (5) resulting damage.  *See Pleas v.*

*Seattle*, 112 Wn.2d 794, 800, 774 P.2d 1158 (1989); *accord Greensun Grp., LLC v. City*

*of Bellevue*, 7 Wn. App. 2d 754, 768, 436 P.3d 397 (2019).

PIC presents evidence showing that it had a valid business expectancy with respect

to Port Townsend Paper's OCC project, and that Hoyt knew of that expectancy—namely,

that in the years leading up to Hoyt's alleged interference, PIC was awarded "about 75

[percent] of Port Townsend Paper's requests for bids on industrial projects."  *See*

Simensen Decl. at ¶ 11 (docket no. 5); *see Life Designs Ranch, Inc. v. Sommer*, 191 Wn.

App. 320, 337, 364 P.3d 129 (2015) ("A plaintiff must show future business

opportunities 'are a reasonable expectation and not merely wishful thinking,' but

certainty of proof is not needed.") (citation omitted).

PIC further contends that Hoyt interfered for an improper purpose or using

improper means because he knew that Port Townsend Paper was one of PIC's customers,

he had access to PIC's customer lists and bidding sheets "[i]n a general sense," and he

"knew exactly how much PIC was bidding" on the OCC projects, even "bragging . . . that

[Defendants] took $58 million of work that could have been awarded to PIC."  PIC MSJ

(docket no. 85 at 14).  The Court has already concluded that PIC failed to satisfy its

1    burden to show that Hoyt used any of PIC's confidential information to secure work for

2    the OCC project, that Hoyt knew PIC's bid amounts before submitting his own bids, or

3    that Hoyt took work from PIC.  *See supra*, Sections 2(A)(i) & (ii).

4           Moreover, the record shows that Hoyt did not initially pursue work for the OCC

5    project—instead, Port Townsend Paper invited Hoyt to bid on these projects.  A Port

6    Townsend Paper manager explained that his company provides bid packages "to a variety

7    of construction companies" and "those companies submit bids." Scott Decl. at ¶ 4 (docket

8    no. 26-2).  He further explained that Port Townsend Paper "does not enter into long-term

9    global contracts with entities . . . for general construction," as "[a]ny number of

10   experienced industrial contractors are permitted to bid for work," and that "no contractor

11   has been promised additional work outside of [Port Townsend Paper's] open bidding

12   process."  *Id.* at ¶¶ 12–16.  Accordingly, summary judgment is not appropriate because

13   genuine disputes of fact exist on whether Hoyt *wrongfully* interfered with PIC's business

14   expectancy.  *See Pleas*, 112 Wn.2d at 800.

15          There are also genuine issues of fact on whether Hoyt's interference induced or

16   caused the loss of PIC's business expectancy with respect to the OCC project.  Even

17   assuming that Hoyt had declined Port Townsend Paper's request to bid on the projects at

18   issue, there was no guarantee that PIC would have secured those projects, as various

19   other contractors were also competing for them.  *See* Scott Decl. at ¶¶ 4, 14 (docket

20   no. 26-2).  PIC has made no showing that it was the only other bidder for these projects

21   or that there was any reasonable likelihood that it would have secured the projects in a

22   competitive bidding environment, absent Hoyt's purported interference with PIC's

23

1   business expectancy.  *See* PIC MSJ (docket no. 85 at 14); *see also Life Designs Ranch*,

2   191 Wn. App. at 338 (affirming grant of summary judgment in favor of defendant where

3   plaintiff failed to show resultant damage to its business expectancy).  PIC's motion for

4   summary judgment, docket no. 85, on this tortious interference claim (fourth cause of

5   action) against Hoyt is DENIED.

6           **iii.**        **Breach of Contract (Sixth Cause of Action)**

7           PIC further argues that summary judgment is appropriate on its breach of contract

8   claim against Hoyt, who allegedly breached the non-solicitation provisions contained in

9   his employment agreement dated August 14, 2018.[7]  Under the customer non-solicitation

10  provision in Hoyt's employment agreement, Hoyt agreed that, for one year after his

11  employment with PIC ended, he would not, "directly or indirectly, solicit or contact any

12  customer or client of [PIC] with a view to inducing or encouraging such client or

13  customer to discontinue or curtail any business relationship with [PIC] within territories

14  in which [PIC] conducts business," and he would not "directly, or indirectly, request or

15  advise any customer or client of [PIC] to withdraw, curtail or cancel its business with

16  [PIC]."  August 2018 Agreement at ¶ 10 (docket no. 56-1).  Hoyt further agreed, under

17

18  _____

19  [7] Although Hoyt and JRG previously disputed the validity of Hoyt's employment agreements with PIC, the Court assumes, for the purposes of these cross-motions, the validity and reasonableness of the non-solicitation provisions and other provisions contained in the agreement that Hoyt signed in August 2018.

20  *See* August 2018 Agreement (docket no. 56-1) (showing that Hoyt received an annual salary and bonus potential in place of his original hourly salary); *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 834, 100

21  P.3d 791 (2004) (concluding that restrictive covenants entered into after an employee begins employment will be enforced if they are supported by independent consideration, such as increased wages, promotions, bonuses, fixed terms of employment, or access to protected information).

22

23

1  the employee non-solicitation provision, that he would not "directly nor indirectly induce

2  or attempt to induce any employee of [PIC] to terminate his or her employment or to go

3  to work for any other employer" for one year after his employment ended. *Id.* at ¶ 9.[8]

4        Based on the present record, there are serious questions as to whether Hoyt's

5  conduct, namely responding to Port Townsend Paper's invitation to submit bids in a

6  competitive bidding environment, amounts to soliciting or contacting Port Townsend

7  Paper with a view of inducing or encouraging it to discontinue or curtail any business

8  relationship with PIC or advising Port Townsend Paper to curtail that business

9  relationship. *See* Order (docket no. 66 at 3).  PIC fails to cite any legal authority, or

10 evidence in the record, supporting its contention that a response to a bid invitation

11 violated the customer non-solicitation provisions in Hoyt's employment contract as a

12 matter of law. *See* PIC MSJ (docket no. 85 at 17).  The Court concludes that although the

13 issue has not been fully addressed in the briefing, there is a strong likelihood that a

14 response to a public bid would not constitute a violation of the non-solicitation provision

15 contained in Hoyt's employment agreement.

16       There are also triable issues of fact on whether Hoyt can be held liable for

17 violating the employee non-solicitation provision in his agreement with PIC.  Although

18 the record shows that Hoyt, or one of his new colleagues, attempted to recruit two PIC

19 employees to work for JRG, neither of those PIC employees accepted Hoyt's offer.  *See*

20 _____

21 [8] PIC also argues that Hoyt violated the provisions relating to PIC's confidential information and trade
   secrets.  Because the Court concludes that Hoyt did not misappropriate or use any of PIC's confidential

22 information or trade secrets, *see supra*, Section 2(A)(i), the Court does not further address this argument.

23

ORDER - 16

1   Baldwin Decl. at ¶¶ 6–7 (docket no. 3), Pavelek Decl. at ¶¶ 18–20 (docket no. 4).  That is,

2   PIC has presented no evidence that it was damaged as a result of Hoyt's breach of this

3   provision.  *See Alpine Indus., Inc. v. Gohl*, 30 Wn. App. 750, 754, 637 P.2d 998 (1981)

4   ("A party is entitled to recover lost profits for breach of contract when (1) they are within

5   the contemplation of the parties at the time the contract was made, (2) they are the

6   proximate result of defendant's breach, and (3) they are proven with reasonable

7   certainty.") (internal citation and quotation marks omitted).  PIC's motion for summary

8   judgment, docket no. 85, on this breach of contract claim (sixth cause of action) against

9   Hoyt is DENIED.

10           **3.      JRG's Counterclaims**

11           JRG moves for summary judgment on its counterclaims for violations of

12   Washington's antitrust laws and for tortious interference with a business interest.  PIC

13   likewise contends that it is entitled to summary judgment.[9]

14                   **A.      Washington Antitrust Violations (First Counterclaim)**

15           JRG argues that PIC violated Washington's antitrust laws, namely the Consumer

16   Protection Act and the Washington Constitution, by seeking to enforce Hoyt's

17   employment agreement with PIC, by asserting "claims that are contrary to law" against

18   Hoyt and JRG, and by seeking to "limit and/or eliminate the ability of competitors to

19   participate in the open-bidding process at the Port Townsend facility."  *See* JRG MPSJ

20   ───────────────

21   [9] PIC did not move for summary judgment on JRG's counterclaims until it filed its response, *see* docket
     no. 88, to JRG's cross-motion for partial summary judgment.  The Court nevertheless treats PIC's

22   response, docket no. 88, as a motion for summary judgment on such counterclaims.

23   ORDER - 17

1   (docket no. 87 at 8–9).  JRG not only fails to cite any authority in support of this suspect

2   legal theory, it fails to point to any evidence demonstrating that PIC has unlawfully

3   sought to prevent JRG from competing against it—as opposed to merely filing this

4   lawsuit, based on PIC's good faith belief that Hoyt and JRG had wrongfully solicited one

5   of PIC's customers in violation of Hoyt's employment agreement.  Although the Court

6   now concludes that JRG is entitled to summary judgment on three of PIC's claims, PIC

7   reasonably brought this action in compliance with Washington's antitrust laws.  *See*

8   *Khalid v. Citrix Sys., Inc.*, No. 79405-1-I, 2020 WL 7136600, at *12 (Wash. Ct. App.

9   Dec. 7, 2020) ("[A]n overbroad non-competition provision in an employment contract,

10  later modified by the court to be enforceable, does not give rise to an antitrust claim.");

11  *see also Armstrong v. Taco Time Int'l, Inc.*, 30 Wn. App. 538, 545, 635 P.2d 1114 (1981)

12  (concluding that a covenant not to compete was reasonable and complied with

13  Washington's antitrust laws).  Absent some indication that JRG has asserted a cognizable

14  legal theory under Washington law, or has alleged facts supported by evidence in the

15  record, the Court DENIES JRG's motion for summary judgment, docket no. 87, and

16  GRANTS PIC's motion for summary judgment, *see* docket no. 88, on JRG's first

17  counterclaim for antitrust violations and DISMISSES this counterclaim with prejudice.

18              **B.      Tortious Interference (Second Counterclaim)**

19          With respect to the counterclaim for tortious interference, JRG again fails to point

20  to any legal authority or supporting evidence.  *See* JRG MPSJ (docket no. 87 at 9–10).

21  JRG argues that PIC "interfered with [JRG's] business expectancy by attempting to

22  interfere with and disrupt work that [JRG] had been awarded as a result of their

23

ORDER - 18

1    successful bid [at Port Townsend Paper] in an open bid process." *Id.* at 10.  Again,

2    however, PIC simply seeks to enforce what the Court assumes to be valid and reasonable

3    non-solicitation provisions in Hoyt's employment agreement with PIC.  These actions do

4    not rise to the level of tortious interference because PIC has not interfered with JRG's

5    business relationship with Port Townsend Paper for any improper purpose or by using

6    improper means.  *See Pleas*, 112 Wn.2d at 800.  The Court DENIES JRG's motion for

7    summary judgment, docket no. 87, and GRANTS PIC's motion for summary judgment,

8    *see* docket no. 88, on JRG's second counterclaim for tortious interference and

9    DISMISSES this counterclaim with prejudice.

10   **Conclusion**

11       For the foregoing reasons, the Court ORDERS:

12       (1)    PIC's motion for summary judgment, docket no. 85, on its first, second,

13   third, fourth, fifth, sixth and seventh causes of action is DENIED;

14       (2)    PIC's response, docket no. 88, contending it is entitled to summary

15   judgment on JRG's counterclaims for violations of Washington's antitrust laws (first

16   counterclaim) and tortious interference (second counterclaim) is GRANTED, and JRG's

17   counterclaims are DISMISSED **with prejudice**;

18       (3)    JRG's motion for partial summary judgment, docket no.  87, is GRANTED

19   in part as to PIC's claims for misappropriation of trade secrets under 18 U.S.C. § 1836

20   (first cause of action), trade secret violations under chapter 19.108 RCW (second cause of

21   action), and unjust enrichment (seventh cause of action) is GRANTED, and these claims

22   against JRG are DISMISSED **with prejudice**.  JRG's motion is otherwise DENIED;

23

ORDER - 19

1    (4)    The Court hereby SETS a telephone conference on **Wednesday, August**

2 **25, 2021, at 11:00 a.m.**  The parties shall be prepared to address the following issues:

3 (i) whether PIC intends to proceed on the seven remaining claims asserted against Hoyt;

4 (ii) whether Hoyt intends to proceed on the five remaining counterclaims asserted against

5 PIC, and if so, why these counterclaims should not be dismissed without prejudice for

6 Hoyt's failure to comply with the Court's prior orders, *see* docket nos. 81 & 83, or for

7 lack of prosecution, *see* Fed. R. Civ. P. 41(b); and (iii) whether any trial will be

8 necessary; and

9    (5)    The Clerk is directed to send a copy of this Order to all counsel of record

10 and to Defendant Hoyt at jason.hoyt1424@gmail.com.

11    IT IS SO ORDERED.

12    Dated this 6th day of August, 2021.

13

14    Thomas S. Zilly
      United States District Judge

15

16

17

18

19

20

21

22

23

ORDER - 20